**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1337
_____

MARK-ALONZO WILLIAMS,
                              Appellant

v.

JOHN WETZEL, SECRETARY PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; MICHAEL KLOPOTOSKI, REGIONAL SUPERINTENDENT;
MICHAEL MAHALLY, SUPERINTENDENT, SCI DALLAS; VINCENT MOONEY,
SUPERINTENDENT, SCI COAL; JOSEPH ZAKARAUSKAS, DEPUTY
SUPERINTENDENT, SCI DALLAS; NORMAN DEMMING, DEPUTY
SUPERINTENDENT, SCI DALLAS; PALL, CAPTAIN, SCI DALLAS; JOSEPH FYE,
CORRECTIONS OFFICER; JAMES C. BARNACLE, Director of Special Investigations
& Intelligence
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-17-cv-00079)
District Judge:  Honorable Sylvia H. Rambo
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
August 27, 2020

Before:  RESTREPO, PORTER and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 10, 2020)

—————

OPINION[*]

—————

PER CURIAM

Pro se prisoner Mark-Alonzo Williams appeals the District Court's order granting summary judgment in favor of the defendants in this 42 U.S.C. § 1983 action. Because this appeal does not present a substantial question, we will summarily affirm.

Williams alleged the following. After he reported to prison officials that he had received a "death letter threat" from another inmate, that inmate, Jason Bader, was placed in the Restrictive Housing Unit ("RHU") for 15 days. Bader was released to a different cell block from where Williams was housed. That evening, shortly before lockdown for the night, Bader came to Williams' cell, attacked him, and attempted to sexually assault him. Williams requested medical treatment, but was told to wait until morning. He again requested to visit medical in the morning, but never received any treatment. Williams reported the rape on the Prison Rape Elimination Act ("PREA") hotline. Ultimately, Williams, rather than Bader, was transferred to another prison. Williams was subsequently transferred to several different prisons where he had "inmate separations."

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

He was assaulted by other inmates at two of the prisons to which he was transferred, but not by inmates with whom he had inmate separations.

Williams brought claims for retaliatory transfer in violation of the First Amendment, failure to protect and deliberate indifference to his medical needs in violation of the Eighth Amendment, denial of parole and equal protection based on his sexual orientation in violation of the Fourteenth Amendment, conspiracy, and violations of the PREA and the Pennsylvania Crimes Code.

The District Court granted summary judgment in favor of the defendants. Williams timely appealed and in this Court he has filed a motion for oral argument via video conferencing.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Kaucher v. County of Bucks, 455 F.3d 418, 422–23 (3d Cir. 2006). We may summarily affirm if the appeal fails to present a substantial question. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam); 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

3

The District Court did not err in granting summary judgment in favor of the defendants. To make out a retaliation claim, Williams needed to show that "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). As the District Court thoroughly explained, Williams presented nothing beyond mere speculation that he was transferred in retaliation for filing the PREA complaint, or that most of the defendants were personally involved in his various transfer decisions. See id.; Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 291 (3d Cir. 2018) ("[I]n the face of [a] motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial.").

The District Court also did not err in granting summary judgment with respect to Williams' failure-to-protect claims. A prison official cannot be found liable under the Eighth Amendment for failure to protect an inmate unless the official subjectively knew of and chose to disregard a substantial risk of serious harm to an inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Negligence is insufficient to support a claim that prison official failed to protect the inmate. Id. at 835. Here, the inmate who assaulted Williams was released from the RHU to a separate cell block. Williams failed to produce any evidence creating a genuine issue of material fact that any

4

of the defendants chose to disregard a substantial known risk that he would successfully attempt to make his way to Williams' cell block, and cell, in order to assault Williams. With regard to Williams' transfer to other prisons where he had inmate separations, as noted above, the record does not indicate that most of the defendants were involved in the transfer decisions. Additionally, this Court is aware of no authority for the proposition that the act of transferring a prisoner to a prison where he has inmate separations is sufficient, in and of itself, to establish a failure-to-protect claim. Furthermore, in this case, the inmates who assaulted Williams were not individual with whom he had separations.[1]

Furthermore, the District Court properly granted summary judgment with respect to Williams' deliberate-indifference claims. The Eighth Amendment prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009) (citations omitted). Allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment. See Estelle, 429 U.S. at 105-06. We agree with the District Court that Williams failed to present evidence that the defendants were aware of any serious

---

[1] Williams also stresses that some of the separations were "off the record." It is not clear what he means by this, but if the separation were not official, it appears even less likely that the defendants disregarded a known risk.

medical needs following the assault, and therefore cannot be liable for a deliberate indifference claim. See Farmer, 511 U.S. at 837 (noting that the defendant must subjectively know of the risk to health or safety).

The District Court also did not err in granting summary judgment as to Williams' procedural-due-process claim based on his transfers allegedly causing his parole revocation to be revoked. Statutes providing for parole do not, by default, create a constitutionally protected liberty interest. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 10-11 (1979). Courts look to a state's statutory language to determine the contours of an inmate's interest in an expectation of parole for procedural due process purposes. Id. at 11-12; see also Jago v. Van Curen, 454 U.S. 14, 20-21 (1981) (per curiam). Under Pennsylvania law, the Parole Board may rescind an order granting parole until the time when Board's order is actually "executed." The Board's order is executed when an order has been issued that grants a prisoner's release and the prisoner has signed an acknowledgment of the conditions of parole. At that time the inmate has a liberty interest in parole. Johnson v. Commonwealth, 532 A.2d 50, 52 (Pa. Commw. Ct. 1987). Here, Williams provided no evidence that his parole order was executed and, therefore, failed to create a genuine issue a to a liberty interest in his release.

With regard to Williams' equal protection claim on a "class of one" theory, the District Court did not err in concluding that he failed to create a genuine issue of material

6

fact that he was treated differently from similarly situated inmates based on his race and sexual orientation. See Hill v. Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) ("[A]t the very least, to state a claim under [a class of one] theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."). Similarly, the District Court did not err in concluding that Williams had no equal protection claim against the defendants based on their failure to charge Bader with more serious offenses, because Williams lacked a cognizable interest in Bader's punishment. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) (noting that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

Moreover, Williams' conspiracy claims failed both because of the lack of evidence demonstrating the existence of a conspiracy and because his constitutional claims failed, as detailed above. Jutrowski, 904 F.3d at 293–94 ("To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights."); see also Lacey v. Maricopa County, 693 F.3d 896, 935 (9th Cir. 2012) ("Conspiracy is not itself a constitutional tort under § 1983."); Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (noting the "mere general allegation . . . [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]" (alterations in original)).

7

Finally, to the extent that Williams sought to bring stand-alone civil claims under the PREA and the Pennsylvania Crimes Code, the District Court did not err in rejecting those claims on the basis that Williams failed to identify a private right of action for either.  Cf. Gonzaga Univ. v. Doe, 536 U.S. 273, 283-85 (2002).

Finding no substantial question raised by this appeal, we will summarily affirm the District Court's judgment.  See 3d Cir. LAR 27.4 and I.O.P. 10.6.  Williams' request for oral argument via video conference is denied as moot.